islature. and not to employ itself on the policy of the law.

Nothing is more correct than this admonition. But how is the court to effect the intention of the legislature? Certainly not by inflicting a penalty of $30,000 in a case where the legislature has declared its intention to be, that the penalty should not exceed $20,-000, nor by referring it to the secretary of the treasury to correct the judgment of the court, in a case in which it has transcended the law, because he has the power to remit a part where it has not exceeded the law. The discretion of the secretary may be exercised, in particular cases, where the court has rendered a judgment conformable to law, but this can never authorize the court to transcend the law, in order to give him an opportunity to display his clemency.

The judgment of the court is affirmed.

NOTE. It is apprehended, that this decision is not in conflict with that of the supreme court of the United States. in the case of Speake v. U. S., 9 Cranch [13 U. S.] 28; 3 Con. Rep. Sup. Ct. U. S. 244. That was an action of debt for $8,787, upon an embargo bond. dated April 14. 1808. taken by the collector of the port of Georgetown, conditioned to be void. if the brig Active should not proceed to any foreign port or place. and the cargo should be relanded in some port of the United States. The bond was executed by Speake, the master. and by Beverly and Ober, the owners of the cargo, in compliance with the provision of the first section of the act of January 9, 1808, cited above. The defendants pleaded various pleas, severally and jointly; to some of which there was a general demurrer and joinder. The circuit court for the District of Columbia, in which the action was brought, decided all the demurrers in favour of the United States, and the case was carried by writ of error to the supreme court. The second joint plea was as follows: "That the defendants ought not to be charged, &c., because they say, that the said writing obligatory was required and taken by one John Barnes," collector, &c., "by colour of his said office, and by pretence of an act of congress, &c., (the act of January 9, 1808). which said writing obligatory and the condition thereof were not taken by the said John Barnes, collector, &c., pursuant to the said act of congress. but contrary thereto in this, to wit: that the said writing obligatory was taken in a sum more than double the value of the vessel and cargo. in the condition of the said writing obligatory mentioned, by reason whereof the said writing obligatory became void and of no effect in law. and this the said defendants are ready to verify; wherefore, &c."

To this plea there was a general demurrer and joinder. Judge Story, in delivering the opinion of the court. said: "The second joint plea of the defendants alleges, that the bond was not taken pursuant to the act of congress, but contrary thereto, in this, that the bond was taken in a sum more than double the value of the vessel and cargo, whereby the bond became void. On demurrer to this plea and joinder in demurrer, the court below gave judgment for the United States; and we are of opinion, that the judgment so given ought to be affirmed. There is no allegation or pretence. that the bond was unduly obtained by the collector, colore officii, by fraud, oppression, or circumvention. It must, therefore, be taken to have been a voluntary bona fide bond. The value was a matter of uncertainty, and the ascertaining of that value was the joint act and duty of both parties. When once that value was ascertained and agreed to by the parties, and a bond executed in conformity to such agreement. the parties were estopped to deny that it was not the true value. If an issue had been taken upon the fact, the evidence on the face of the bond would have been conclusive to the jury; and, if so, it is not less conclusive upon demurrer. It would be dangerous in the extreme to admit the parties to avoid a sealed instrument by averring that there was an error in the value by an innocent mistake. or by accident, or by circumstances against which no human foresight could guard. A mistake of one dollar would be as fatal as of $10,-000. Suppose the double value were underrated. could the United States avoid the bond. and thereby subject the parties to the penalties of the third section? Where the law provides that the penal sum of a bond shall be equal to the double value, and the parties voluntarily and without fraud assent to the insertion of a given sum, it is as much an estoppel as if the bond had specially recited that such sum was the double value."

The majority of the court affirmed the judgment of the court below. Marshall. Circuit Justice, said he was rather inclined to think that the plea was good. which stated that the bond was given for more than double the value of the vessel and cargo. If the bond was given for more than double that value. he thought it was void in law. He should not, however, have intimated his opinion on this point. if a dissenting opinion had not been given on another point in the cause. and his silence might have been construed into an assent to the entire opinion of the court, as it had been delivered.

In the above extract from the opinion of the court. Judge Story relies strongly upon the fact that the plea contained no allegation that the bond was obtained by the collector, by colour of his office, by fraud, circumvention, or oppression; from which it may be inferred that, had the plea contained such allegation, it would have been held good, and the demurrer overruled. But, in U. S. v. Gordon, above reported, the plea expressly charged, that the obligors were constrained to execute the bond, by the refusal of the collector, &c., to clear, and permit the vessel and her cargo to depart, &c., until the said bond was executed, &c. The United States carried the above reported case of U. S. v. Gordon to the supreme court of the United States. by another writ of error, but that court dismissed it for want of jurisdiction. 7 Cranch [11 U. S.] 287.

---

## Case No. 15,233.

### UNITED STATES v. GORDON.

[1 Cranch, C. C. 58.] [1]

Circuit Court. District of Columbia. Jan. Term, 1802.

SELLING LIQUOR WITHOUT LICENSE—INFORMATION.

1. In an information for selling spirituous liquors without license. it is not necessary to specify the kind of liquor. nor the person to whom sold.

2. All the acts of selling constitute one offence.

Information [against Robert Gordon] for selling spirituous liquors. Motion in arrest of judgment. 1st. Because the particular kind of liquor is not specified in the information. 2d. Because the person is not named to whom sold.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. E. J. Lee, for defendant. The clause of the act of assembly upon which this prosecution is founded, is in the following words. Rev. Code. p. 212, § 4. "If any person, without such license, shall open a tavern, or sell by retail, wine, beer, cider, rum, or brandy, or other spirituous liquors, or a mixture thereof, to be drank in or at the place where it shall be sold, or in any booth, arbor, or stall, such offences shall be deemed a breach of good behavior, and he or she so offending, shall moreover forfeit and pay the sum of thirty dollars, to be applied towards lessening the county levy." By the fifth section, the offender, upon a second conviction, is to be imprisoned six months without bail or mainprise. Every selling is a distinct offence. If this was not the case, a conviction for the last selling would bar a prosecution for all the former offences. Rex v Robe, 2 Strange, 999; Davy v. Baker, 4 Burrows, 2471; Rex v. Mason, 2 Term R. 581; Style, 186.

Mr. Simms, on the same side. The information is not sufficiently certain to enable the defendant to meet the charge by counter evidence, or to plead it in bar of a subsequent prosecution. By the fifth section of the act, a higher penalty is annexed to a second offence, and in such case the indictment must state the prior conviction. A declaration, in trover, as uncertain as this, would be bad (5 Bac. Abr. 272); a fortiori, an information, or an indictment. The court is bound, ex officio, to see that the information states sufficient to warrant a judgment. Rex v. Wheatly, 2 Burrows, 1127; 2 Ld. Raym. 1410; 2 Hawk. P. C. 332. The offence is alleged to have been committed on the 10th of August, 1798; and the information was not filed until April, 1800, more than twelve months after the offence committed, contrary to the act of assembly (Rev. Code, p. 113).

Mr. Mason, contra. The limitation of one year applies to the prosecution, not to the filing of a particular process. The presentment upon which the information was filed was within the year. The first step was the presentment, and that is the commencement of the prosecution. Rev. Code, p. 106, § 2. Circumstances which constitute the offence, must be set out. But where they are not of the essence of the offence, there, if set forth, they are only surplusage. Rex v. Horne, Cowp. 682. The words of the act are "spirituous liquors or a mixture thereof." It may be impossible for a man to say what kind of liquors constitute the mixture; and yet he may be certain that he is drinking spirituous liquors. Rex v. Gibbs, 1 Strange, 497. All the acts of selling spirituous liquors before conviction constitute but one offence. Crepps v. Durden, Cowp. 640.

Motion overruled and judgment entered.

[For subsequent proceedings. see Case No. 15,234.]

## Case No. 15,234.

### UNITED STATES v. GORDON.

[1 Cranch, C. C. 81.] [1]

Circuit Court, District of Columbia. April Term. 1802.

#### SELLING LIQUOR WITHOUT LICENSE.

Under the act of Virginia prohibiting the sale of spirituous liquors without license. all the acts of selling before conviction constitute but one offence.

Indictment [against Robert Gordon] for retailing spirituous liquors. [For prior proceedings, see Case No. 15,233.] The judgment was arrested; because the indictment charged it as a second offence, before the defendant was convicted of a first; the court being of opinion that all selling before conviction constituted but one offence.

## Case No. 15,234a.

### UNITED STATES v. The GORDON.

[N. Y. Times.]

District Court, S. D. New York. Dec. 14, 1862.

#### PRIZE—CAPTURE BY ARMY AND NAVY—THE BLOCKADE.

This vessel was captured in Beaufort at the same time as the Alliance. She was also of American build, owned by the same owners in this country, and transferred at the same time to the same English claimants, and entered the port of Beaufort seven days after the Alliance, having knowledge of the blockade, and was loaded there prior to Sept. 14, 1861, and documented for departure in substantially the same manner. She brought there from Liverpool 4,300 sacks of salt, and 112 tons of iron. The master, Jennings, knew the port was blockaded, but says the first blockading vessel he saw there was on Sept. 6 or 7. Most of her cargo was taken on board after that date. This master was put in command at Beaufort, after her former master, Gooding, left her. The steamer Nashville, coming in there, left a few days after the change, and Jennings says it was rumored that Gooding took command of the Nashville and went to sea in her, and he had not seen him since. One objection taken by the claimants was that at the time of the capture Beaufort was in the custody of the army of the United States, and a neutral vessel there was not subject to capture.

Mr. Upson and Mr. Andrews, for the United States and captors.

Mr. Edwards, for claimants.

HELD BY THE COURT: That the presumption from the fact is exceedingly cogent that the voyage was set on foot and prosecuted to its termination with full knowledge of the blockade and intent to invade it. No proof is found in the ship's papers or in the

[1] [Reported by Hon. William Cranch. Chief Judge.]